**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AEL FINANCIAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11 C 9052 |
| | ) |
| HUNT CLUB PEDIATRIC ASSOCIATES, | ) |
| P.A., d/b/a HUNT CLUB MED SPA, LLC, | ) |
| and CARLOS E. CHABAN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

AEL Financial, LLC (AEL) has sued Hunt Club Pediatric Associates, P.A., d/b/a Hunt Club Med Spa, LLC (Hunt Club), for breach of a finance lease and Carlos Chaban, the guarantor of the lease, for breach of his guaranty. The Court has jurisdiction based on diversity of citizenship, and Illinois law governs. AEL has moved for summary judgment on its claims against both defendants. For the reasons stated below, the Court grants the motion in part and denies it in part.

**Background**

Chaban, a medical doctor who practices in Florida, established Hunt Club Pediatrics in August 1998 and Hunt Club Med Spa (together with another doctor) in August 2008. On October 3, 2008, he authorized "Hunt Club Pediatric Associates, P.A. DBA Hunt Club Med Spa, LLC" to lease a laser system manufactured by Cynosure, with financing provided by AEL via an equipment lease. Chaban agreed to guarantee Hunt

Club's obligations under the lease. The lease agreement required Hunt Club to make three monthly payments of $100.00 and sixty monthly payments of $2,528.69 to AEL, as well as applicable taxes. Hunt Club received the equipment on October 31, 2008.

Hunt Club made a series of payments on the lease, but by July 2011, it had stopped paying. In August 2011, AEL sent Hunt Club a notice stating that it had defaulted on the lease and demanding payment of the entire balance owed under the agreement. AEL repossessed the laser system and sold it through a third party for $25,000 in November 2011. AEL contends that after paying the third party's recovery fee, it made a net profit of $22,500, which it allegedly applied toward Hunt Club's debt. According to the defendants, Hunt Club Med Spa stopped doing business at some point in 2011, and Chaban now practices medicine only through Hunt Club Pediatrics.

AEL brought suit against Hunt Club and Chaban in December 2011. In its complaint, AEL alleged that Hunt Club and Chaban are jointly liable for $123,402.53, along with attorney's fees. In its motion for summary judgment, however, AEL states that the amount owed is $118,341.89.

**Discussion**

Summary judgment is appropriate when the evidence demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 898 (7th Cir. 2011). In deciding on a motion for summary judgment, courts "view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is proper only "if no reasonable trier of fact could

2

find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (internal quotation marks omitted).

Neither Hunt Club nor Chaban disputes that Hunt Club signed the lease agreement (of which Chaban agreed to serve as guarantor), that Hunt Club missed a number of payments, or that it is obligated to pay some amount of money to AEL. Hunt Club has submitted articles of incorporation for both Hunt Club Pediatrics and Hunt Club Med Spa in an apparent effort to show that the two entities are legally separate. But Hunt Club does not argue, nor could it plausibly do so, that this separation excuses Hunt Club Pediatrics from liability under the lease agreement. Although the two businesses may have separate corporate existences, "Hunt Club Pediatrics, P.A. DBA Hunt Club Med Spa, LLC" entered into the lease agreement with AEL, and Hunt Club Pediatrics is therefore a proper party to AEL's suit alleging a breach of that agreement. *See, e.g., Pekin Ins. Co. v. Estate of Goben*, 303 Ill. App. 3d 639, 645–46, 708 N.E.2d 1259, 1264 (1999) ("Doing business under another name does not create an entity distinct from the person operating the business.").

The defendants contend that summary judgment is inappropriate because issues of fact remain regarding the amount that AEL is owed. First, they argue that the evidence that AEL has submitted regarding its damages is inadmissible. Second, they argue that AEL has not provided evidence sufficient to entitle it to summary judgment on the defense of failure to mitigate damages.

1.  **Sufficiency of evidence of amounts owed**

AEL has calculated the amount it contends is owed based on an affidavit from Nick Kondras, its collections manager. According to Kondras, the full balance that Hunt

3

Club owes AEL under the lease is $118,341.89. This figure includes missed rental payments, late fees, insurance premiums, personal property tax payments for 2010, 2011, and 2012, and an "End of Lease Term Provision fee for Equipment Residual." Pl.'s Ex. I at 2. Attached to Kondras's affidavit is a "payoff statement" that purportedly summarizes the amount owed. That statement includes the following calculations for Hunt Club's obligations under the lease:

| Firm Rent | $73,332.01 |
|---|---|
| Sales Tax | $2,958.57 |
| Accrued Use Tax | $1,904.86 |
| **Payment Subtotal** | **$78,195.44** |
| Legal/Collection Fee | $155.00 |
| Process Fee (PBP/NSF) | $5.00 |
| Late Charges | $10,926.25 |
| Insurance Premium | $12,771.00 |
| **Assessment Subtotal** | **$23,857.25** |
| Personal Property Tax for 2010 | $774.74 |
| Personal Property Tax for 2011 | $1,639.80 |
| Personal Property Tax for 2012 | $1,360.91 |
| **Personal Property Tax Subtotal** | **$3,775.45** |
| Equipment Price | $11,750.00 |
| Equipment Sales Tax | $763.75 |
| **Equipment Residual Subtotal** | **$12,513.75** |
| **Final Total** | **$118,341.89** |

Kondras states that AEL's sale of the equipment for a net profit of $22,500.00 has been "applied directly to [the] balance owed under the Lease." *Id.* at 2. The payoff statement, however, does not reflect where that amount was subtracted from the balance of Hunt Club's debt.

The defendants contend that Kondras's affidavit is not based on his personal knowledge and that the payoff statement payoff statement lacks a proper evidentiary foundation. The Court disagrees. Kondras states that as collections manager for AEL, his job is to "insure that timely payments are made and to insure compliance with all other loan terms." *Id.* at 1. He states under oath that he is personally familiar with all of AEL's records regarding its lease with Hunt Club. He also lays the evidentiary foundation for the document included with his affidavit. According to Kondras, the document is a "payoff statement" that was generated by AEL's "electronic accounting/payment management system . . . which automatically calculates, tracks and maintains balances and interest owed." *Id.* at 2–3. Kondras states that the statement was created in the regular course of business "at or around the date the payoff was generated." *Id.* at 2. Kondras's affidavit reflects that he is speaking with the requisite personal knowledge, and his sworn statements are sufficient to lay the foundation for admissibility of the payoff statement under Federal Rule of Evidence 803(6).

This does not mean, however, that the affidavit is sufficient to show the absence of a genuine factual dispute regarding the amount due to AEL. To the contrary, Kondras's statements about the amount of Hunt Club's outstanding debt are too conclusory to carry the day.

5

A party moving for summary judgment bears the initial burden of establishing the non-existence of a genuine factual dispute. Fed. R. Civ. P. 56(a); *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994). If the movant fails to satisfy that burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring) ("It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion . . . ."). Under Rule 56(c), affidavits supporting and opposing motions for summary judgment must do more than present admissible evidence—namely, they must "set out facts." Fed. R. Civ. P. 56(c); *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989) ("Admissibility does not imply utility."). "Reliable inferences depend on more than say-so, whether the person doing the saying is a corporate manager or a putative expert." *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir. 2005); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Kondras's affidavit and the payoff statement offer only bottom-line conclusions as to the amount that Hunt Club owes AEL, often without any explanation for how those conclusions were reached. It is not enough in this regard for Kondras or AEL simply to say that the payoff statement comes from the computer system that AEL routinely uses to ascertain the amount its lessees owe. In particular, Kondras has not explained what provisions in the lease agreement justify the imposition of the costs summarized in the payoff statement, nor has he set forth how the lease provisions were applied to create the total amounts AEL contends it is owed.

6

For example, Kondras states that the defendants owe "late fees/insurance in the amount of $23,857.25," Pl.'s Ex. I at 2, but he does not explain how he that figure was derived. The payoff statement goes into somewhat more detail, stating that the total includes $155.00 for a legal/collection fee, $5.00 for a processing fee, $10,926.25 for late charges, and $23,857.25 for insurance premiums. Kondras does not identify, however, what provision of the lease requires the defendants to pay a legal/collection fee or a processing fee, nor has he explained the specific amount of the fees, and defendants have done nothing in their briefs to clear this up. As for the late charges, the lease agreement provides that if Hunt Club fails to make payments within ten days of the applicable due date, AEL may charge Hunt Club a late fee equal to ten percent of the payment. Based on the rent AEL contends it is owed ($78,195.44, including applicable taxes), that provision would appear to warrant imposing $7,819.54 in costs against Hunt Club for late fees. Kondras does not explain why the payoff statement reflects an additional $3,106.71 in late charges, nor has he identified what provision in the agreement justifies the higher amount.

The payoff statement also states that the defendants owe $12,771.00 for insurance premiums. The lease agreement provides that if Hunt Club does not provide its own insurance for the equipment, AEL may purchase insurance and require Hunt Club to pay it for the monthly premiums. The lease agreement does not, however, specify the amount Hunt Club must pay for the premiums, stating only that "[t]he estimated premium is $387 per month for the full term of the Lease." Pl.'s Ex. A at 1. AEL evidently opted to purchase insurance for the equipment here, although Kondras includes nothing in his affidavit that would establish this. That aside, Kondras has not

7

identified the actual monthly premiums or the length of time that AEL paid those premiums without compensation from Hunt Club.

Kondras states that the defendants owe $3,775.45 for personal property taxes, and the payoff statement gives yearly amounts of the taxes owed for 2010, 2011, and 2012. The lease agreement provides that Hunt Club must pay AEL a "processing fee" of ten percent of the assessed personal property tax, in addition to the tax itself. *Id.* at 2. Yet Kondras does not explain in his affidavit whether the yearly amounts listed on the payoff statement reflect the amount of property taxes AEL actually paid, or whether those figures include the processing fee.

Finally, Kondras contends that the defendants owe AEL $12,513.75 for the "End of Lease Term Provision fee for Equipment Residual required under the Lease . . . ." Pl.'s Ex. I at 2. The "End of Lease Term Provision" provides that Hunt Club "must purchase the Property for [its fair market value] but not less than 10% of Lessor's cost basis plus taxes." Pl.'s Ex. A at 1. Kondras has not explained why this provision, which appears to govern the parties' actions once the initial term of the lease agreement has ended without default, justifies imposing a fee on the defendants based on Hunt Club's default. He has also failed to provide a basic explanation for why the "equipment price" is $11,750.00 or whether the $22,500 that he contends AEL gained from the sale of the equipment was somehow factored into this figure. For these reasons, Kondras's conclusory affidavit is insufficient to establish as a matter of law the amount of damages to which AEL is entitled. *See Adickes*, 398 U.S. at 160. Genuine issues of material fact remain.

**2.    AEL's resale of equipment**

Defendants also argue that AEL "has failed to provide any supporting documentation or evidence that [it] fully mitigated its damages." Defs.' Resp. at 4. Defendants have not shown that AEL is required to mitigate damages, *see* 810 ILCS 5/2A-527 (lessor "may" sell the goods in the event of a breach by the lessee), but assuming it is, defendants (not AEL) bear the burden of proving failure to mitigate. *See Williams v. Bd. of Educ. of Clinton Cmty. Unit Sch. Dist. No. 15 of DeWitt Cnty.*, 52 Ill. App. 3d 328, 334, 367 N.E.2d 549, 554 (1977).

It is undisputed that AEL resold the equipment in November 2011, and Kondras swore in his affidavit that AEL has deducted the net profit of the sale from Hunt Club's debt – though he did not explain how or where. Although the lack of explanation in Kondras's affidavit precludes entry of summary judgment in AEL's favor on the issue of damages, defendants have not contradicted AEL's contention that it deducted the proceeds of the sale of the equipment from Hunt Club's total debt. Given these circumstances, defendants have submitted no evidence that would allow a reasonable jury to conclude that AEL failed to fulfill any obligation to mitigate damages.

Because the defendants have conceded all other material facts required for AEL to prevail on the issue of liability, no reasonable jury could deny that they are liable to AEL for some amount under the lease. *See Canal Barge Co. v. Commonwealth Edison Co.*, No. 98 C 0509, 2002 WL 1264002, at *6 (N.D. Ill. June 3, 2002) ("The fact that parties dispute the amount of damages does not preclude the entry of summary judgment on the issue of liability."). Summary judgment is therefore appropriate on the issue of the defendants' liability.

9

**Conclusion**

For the reasons stated above, the Court grants AEL's motion for summary judgment with regard to liability but denies the motion with regard to damages [docket no. 19]. The case is set for a status hearing on January 3, 2013 at 9:30 a.m. for the purpose of discussing the possibility of settlement and setting a date for trial on the issue of damages.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  December 20, 2012